**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>GUR-MEAT, INC.<br><br>  Debtor. | CASE NO. 23-01914 MAG11<br><br>CHAPTER 11<br><br>FILED & ENTERED ON 02/06/2024 |

**OPINION AND ORDER**

This case came before the court on October 20, 2023 for a hearing to consider the emergency motion filed by Debtor Gur-Meat, Inc. ("Debtor") on September 29, 2023 for entry of an order for (a) connection of electric service; (b) providing adequate assurance of payment to LUMA Energy, LLC, and LUMA Energy ServCo, LLC (jointly, "LUMA"); and (c) for an order to show cause against LUMA as to why it should not be held in contempt of court pursuant to 11 U.S.C. §§ 362, 366, 525 and 105(a) of the Bankruptcy Code (the "Emergency Motion"). (Dkt. # 89). LUMA filed its response on October 18, 2023 and Debtor filed a supplement to the declaration attached to the Emergency Motion on October 19, 2023. (Dkt. ## 99, 100). At the hearing to consider the Emergency Motion (the "Hearing"), Debtor and LUMA argued their positions and the court took the matter under advisement. See *Minute Entry*, Dkt. #112. The court notes that the parties agreed that electric power had been reconnected on October 12, 2023 and thus the matter ceased to be urgent, however Debtor requested the imposition of damages for the unnecessary delay in the connection of the service including attorney's fees and costs. For the reasons stated herein, Debtor's Emergency Motion is denied.

## I.      JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

## II.     PROCEDURAL BACKGROUND

This case was filed on June 23, 2023. (Dkt. # 1). On September 29, 2023, Debtor filed the Emergency Motion arguing in essence the following: (1) the electric power account for the premises where Debtor operates was under the name of Debtor's president, Ms. Mariely Ramos Rojas, and on February 21, 2023, LUMA disconnected the service for lack of payment; (2) upon the filing of the petition, Debtor's shareholder contacted LUMA multiple times to request the reconnection of electric power, but LUMA refused to reconnect service because the account was under the name of Ms. Ramos Rojas and not under Debtor's name; (3) since February 21, 2023, Debtor had been operating with a generator; (4) LUMA should be ordered to reconnect service either by accepting payment of adequate assurance under the existing account or by opening a new post-petition account; and (5) LUMA opted to deny service to Debtor in violation of 11 U.S.C. §§ 362 and 366, discriminated against Debtor pursuant to 11 U.S.C. § 525 and the court should enter an order for it to show cause as to why it should not be held in contempt of court for the foregoing alleged violation of sections 11 U.S.C. §§ 362, 366, and 525. (Dkt. # 89).

On October 18, 2023, LUMA filed its response to the Emergency Motion in which it argued that such motion is moot upon the connection of electric power on an expedited basis on October 13, 2023 and that Debtor has not set forth any reason that would justify an order to show

cause against LUMA. (Dkt. # 99). LUMA argued that it could not have violated the automatic stay because the utility account was under the name of Debtor's president and not under Debtor's name and Debtor had to open its own utility account pursuant to LUMA's procedure for new customers. Once Debtor completed such process, the electric power was connected.

On October 19, 2023, Debtor filed a supplement to Debtor's declaration in Dkt. # 89, and request for leave to file a sur-reply to LUMA's response filed at Dkt. # 99 and for an extension of time (the "Supplement"). (Dkt. # 100). Debtor stated that it submitted all required documents on July 3, 2023 for LUMA to create a new account under Debtor's name and instead of connecting the electric power, LUMA opted to collect on the debt of the account under Ms. Ramos Rojas' name from the surety bond. Debtor further stated that from July 3, 2023 until October 12, 2023, it suffered damages for the unnecessary delay in the connection and requested the court to impose actual and punitive damages together with the imposition of attorney's fees and costs.

At the Hearing, Debtor stated that the Emergency Motion had ceased to be urgent because the electric power had been connected. Debtor argued that the matter was not moot because Debtor suffered damages due to LUMA's alleged failure to timely connect service. Debtor further argued that it submitted all documents required to open a new account in July 2023 and LUMA took no action. LUMA responded that Debtor did not submit all documents required to open a new account and Debtor failed to follow up or communicate with LUMA to ensure that all documents were submitted and to know the status of the connection of electric power. Once Debtor submitted all documents required for new customers, the electric power was connected.

After hearing the parties' arguments, the court took the matter under advisement. See

*Minute Entry,* Dkt. # 112.

At this juncture, it is uncontested that the electric power in Debtor's premises has already

been connected. Therefore, such request is moot. However, Debtor also requested the court to

impose damages against LUMA under 11 U.S.C. §§ 105(a), 362(a), 366, and 525 for its alleged

discriminatory refusal to timely attend to Debtor's request for a new account. As such, the court

must first consider whether LUMA violated 11 U.S.C. §§ 362, 366, or 525. For the reasons

stated below, the court finds that LUMA did not violate such sections of the Bankruptcy Code.

Therefore, the Emergency Motion is denied and the court need not discuss the imposition of

damages under 11 U.S.C. § 105(a).[1]

## III.    APPLICABLE LAW AND DISCUSSION

### A.  11 U.S.C. §§ 362 & 366

11 U.S.C. §§ 362(a)(1) and (6), which are the subparagraphs cited by Debtor in the

Emergency Motion, provide as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under
> section 301, 302, or 303 of this title, or an application filed under section 5(a)(3)
> of the Securities Investor Protection Act of 1970, operates as a stay, applicable to
> all entities, of--
> (1) the commencement or continuation, including the issuance or employment of
> process, of a judicial, administrative, or other action or proceeding against the
> debtor that was or could have been commenced before the commencement of the
> case under this title, or to recover a claim against the debtor that arose before the
> commencement of the case under this title;
> . . .
> 6) any act to collect, assess, or recover a claim against the debtor that arose before
> the commencement of the case under this title.

11 U.S.C. § 362(a)(1), (6).

---

[1] 11 U.S.C. § 105(a) provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

"The automatic stay in 11 U.S.C. § 362(a) is one of the basic protections under the Bankruptcy

Code and becomes operative by the filing of the bankruptcy petition." In re Montalvo, 537 B.R.

128, 140 (Bankr. D.P.R. 2015) (internal quotations omitted). It is extremely broad in scope and

"provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a

"breathing room" from the pressures of their creditors." Id. Although the automatic stay is broad,

it "does not extend to separate legal entities such as corporate affiliates, partners in debtor

partnerships or to codefendants in pending litigation." In re Slabicki, 466 B.R. 572, 580 (B.A.P.

1st Cir. 2012) (internal quotations omitted).

A debtor seeking damages for violation of the automatic stay "bears the burden of

proving by a preponderance of the evidence the following three elements: (1) that a violation of

the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the

debtor suffered damages as a result of the violation." In re Slabicki, 466 B.R. at 577–78 (internal

citations omitted).

In addition to the operation of the automatic stay, a bankruptcy debtor has certain special

protections regarding utilities pursuant to 11 U.S.C. § 366, which provides in relevant part as

follows:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not
> alter, refuse, or discontinue service to, or discriminate against, the trustee or the
> debtor solely on the basis of the commencement of a case under this title or that a
> debt owed by the debtor to such utility for service rendered before the order for
> relief was not paid when due.
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor
> the debtor, within 20 days after the date of the order for relief, furnishes adequate
> assurance of payment, in the form of a deposit or other security, for service after
> such date. On request of a party in interest and after notice and a hearing, the
> court may order reasonable modification of the amount of the deposit or other
> security necessary to provide adequate assurance of payment.
> (c)(1)(A) For purposes of this subsection, the term "assurance of payment"
> means--
> (i) a cash deposit;

(ii) a letter of credit;
(iii) a certificate of deposit;
(iv) a surety bond;
(v) a prepayment of utility consumption; or
(vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.
(B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.
(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.
(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

11 U.S.C. § 366(a), (b), (c)(1), (c)(2), (c)(3).

11 U.S.C. § 366 "recognizes the monopoly powers of most utilities who provide services such as electricity, water and gas . . . a public utility is required to continue to provide service to the debtor after a bankruptcy case is commenced." 3 Richard Levin & Henry J. Sommer, Collier on Bankruptcy ¶ 366.01 (16th ed. 2023). Pursuant to this section, "a utility may not refuse service to a debtor "solely" on the basis of the commencement of a bankruptcy case and unpaid prepetition debts." In re Montalvo, 537 B.R. at 144. If a debtor fails to provide the utility with adequate assurance of payment within 20 days of the petition, or within 30 days in Chapter 11 cases, then the utility may alter, refuse, or discontinue service. See 11 U.S.C. § 366(b) & (c)(2). 11 U.S.C. "§ 366(b) has been read as an exception to the automatic stay, allowing a utility to alter, refuse or discontinue service for failure to provide adequate assurance of payment without recourse to the bankruptcy court." In re Jones, 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007).

"Section 366(b) establishes adequate assurance of payment for post-petition services in all cases, except for chapter 11 cases. . ." In re Montalvo, 537 B.R. at 145. 11 U.S.C. § 366(c)

-6-

has specific provisions regarding adequate assurance that are only applicable in Chapter 11 cases:

> In a Chapter 11 case, the utility has great leverage, as the Code provides that adequate assurance must be that which is satisfactory to the utility. If the debtor does not provide such within 30 days of the date of filing, the utility can proceed to alter, refuse, or discontinue service. There is a small escape clause which allows a court, on request of a party in interest and after notice and hearing, to order modification of the assurance demanded by the utility. . .

2 Hon. Joan N. Feeney et al., Bankruptcy Law Manual § 7:64 (5th ed. 2023). 11 U.S.C. § 366(c)(1) limits the types of adequate assurance of payment that can be provided by defining the term "assurance of payment". 11 U.S.C. § 366(c)(2) "alters the procedures applicable to the provision of adequate assurance by essentially requiring, in the first instance, that the debtor pay what the utility demands, unless the court orders otherwise." 3 Collier on Bankruptcy at ¶ 366.03. In a Chapter 11 case, debtors may comply with 11 U.S.C. § 366 by proposing an "amount of adequate assurance in a motion filed at the start of a case and the Court may appropriately enter a scheduling order, which sets an objection deadline and hearing date which allows for any dispute to be resolved prior to the 30 day deadline in § 366(c)(2)." In re Beach House Prop., LLC, 2008 WL 961498, at *2 (Bankr. S.D. Fla. 2008).

In this case, it is uncontested that as of the petition date, the account for electric power with LUMA was not under Debtor's name, but under the name of Debtor's president, Ms. Ramos Rojas. The automatic stay prohibits the commencement or continuation of actions or proceedings against Debtor as to pre-petition claims and any act to collect, assess, or recover a pre-petition claim against Debtor. See 11 U.S.C. § 362(a)(1), (6). Debtor did not claim that LUMA made any collection attempt or continued any action against Debtor regarding a pre-petition claim. Instead, Debtor argued that LUMA attempted to create pressure for payment of a pre-petition debt through a collection action against Ms. Ramos Rojas. But the fact is that there is no pre-petition

debt with LUMA because LUMA's claim is against Ms. Ramos Rojas and not against Debtor. Ms. Ramos Rojas is not a debtor in bankruptcy. The court finds that LUMA did not take any action prohibited by 11 U.S.C. § § 362(a)(1) or (6) against Debtor and therefore, there cannot be a violation of the automatic stay under these facts. See In re Matthews, 24 B.R. 545, 546 (Bankr. E.D. Pa. 1982) (explaining that "[t]he stay only prevents creditors from enforcing pre-petition claims" and finding that the utility did not violate the stay upon its failure to restore gas service because the delinquent account was in the name of a non-debtor individual sharing the residence with the debtor.)

In the same vein as the protection afforded by the automatic stay, 11 U.S.C. § 366 "requires not only the continuation of service, but also the provision of service to a debtor who has not had service before or who has had service terminated before the petition was filed." 3 Collier on Bankruptcy at ¶ 366.02 (16th ed. 2023). Such service may be conditioned "in the case of a new customer if it is required of all new customers and therefore not required as a result of the commencement of the case or a prepetition debt." Id.

On June 30, 2023 and July 3, 2023, Debtor requested LUMA to connect service under a new account, which is within the 30-day period provided by 11 U.S.C. § 366(c)(2). (Dkt. # 100-1, pp. 1-2, 5; Dkt. # 175, p. 9). However, as a new customer, Debtor had to comply with the requirements imposed by LUMA that are applicable to any other new customer. On October 3, 2023, LUMA informed Debtor that the only pending document for the opening of a new account was the certificate of good standing. The communications attached to Debtor's Emergency Motion and Supplement show that Debtor contacted LUMA on July 3, 2023 to request a new account, on September 21, 2023 through counsel, and on October 2, 2023 to follow-up on the request for a new account. (Dkt. # 89-2, p. 3; Dkt. # 100-1, p. 5, 11; Dkt. # 175, pp. 6, 9, 14). On

October 3, 2023, upon Debtor's follow-up email dated October 2, 2023, LUMA informed Debtor that the certificate of good standing was missing.[2] (Dkt. # 100-1, p. 11; Dkt. # 175, p. 14). LUMA's website establishes that one of the requirements for the opening of a commercial account is submitting a certificate of good standing, certificate of existence, or certificate of incorporation issued less than a year prior to the request for connection.[3] Therefore, Debtor failed to submit all documents required for any new commercial customer.

As such, LUMA did not connect service upon Debtor's request, not based on the commencement of this case or of a pre-petition debt, but because one of the documents required for new customers was not provided. Moreover, the communications attached to the Emergency Motion and the Supplement do not show due diligence on either part to complete the process of registering a new customer with the utility and connecting the electric power. This case was filed on June 23, 2023 and Debtor sent the documents for connection of a new account on July 3, 2023. It was not until September 29, 2023, almost three months later, that Debtor filed the Emergency Motion seeking relief for the alleged violations to 11 U.S.C. §§ 362, 366, and 525. One of the typical first day motions in a Chapter 11 case is a motion under 11 U.S.C. § 366(c) for it to be heard prior to the lapse of the 30-day term to provide satisfactory adequate assurance of payment. The record in this case is devoid of any request related to the connection of electric power until the filing of the Emergency Motion more than three months after the petition date. At the Hearing, Debtor admitted not communicating with LUMA after the initial request on July 3, until September and again on October 3, 2023 to inquire the status of the request for connection. Once LUMA informed Debtor that the required certificate of good standing for a

---

[2] Debtor's communication to LUMA on July 3, 2023 shows that Debtor submitted several documents but not a certificate of good standing. (Dkt. # 100-1, p. 5; Dkt. # 175, p. 9).

[3] LUMA, https://lumapr.com/faq/?lang=en (choose "what do I need to be able to connect commercial service?" from dropdown) (last visited Jan. 30, 2024).

new customer had not been submitted, the same was provided and power was connected soon thereafter. It is inescapable to conclude that Debtor's lack of diligence greatly contributed to the delay of the electric power connection and not LUMA's alleged violations of the provisions of the Bankruptcy Code. Because the delay in connection of electric power was not due to the commencement of the bankruptcy petition or a pre-petition debt owed by Debtor to LUMA, the court does not find a violation of 11 U.S.C. § 366. See In re Watson, 1997 WL 33475578, at *1 (Bankr. S.D. Ga. 1997) (finding that "[s]ection 366 simply does not apply where, as here, a debtor did not maintain pre-petition services with the utility and the utility's refusal to furnish services does not stem from the debtor's bankruptcy petition" and that the utility only sought "to impose the ordinary requirements of new account service.")

At the Hearing, Debtor cited the case of In re Whittaker, 882 F.2d 791 (3d Cir. 1989) in support of its position that LUMA violated 11 U.S.C. § 366 because it was obligated to provide service to Debtor upon its request. In Whittaker, a Chapter 7 debtor filed a class action complaint against the Philadelphia Electric Company because of such company's policy to require payment of adequate assurance to bankruptcy debtors prior to reconnecting service. The debtor in such case had a pre-petition account with the utility company and service was terminated pre-petition for delinquent electric power bills. Pursuant to its policy, the Philadelphia Electric Company required payment of adequate assurance prior to reconnecting the electric power. The court found that such policy violated 11 U.S.C. § 366 and stated that the plain language of 11 U.S.C. §§ 366(a) and (b) "requires that service be furnished, without prior payment of adequate assurance, for twenty days from the order for relief if the debtor requests such service." In re Whittaker, 882 F.2d at 794. Thus, the issue in Whittaker was the requirement of adequate

assurance payment before reconnecting service within the 20-day period provided by 11 U.S.C. § 366(b).

The facts in Whittaker are inapposite to the facts before the court because LUMA did not refuse service due to Debtor's filing of this petition or its insolvency or conditioned providing service by requiring prior adequate assurance payment. The fact is that Debtor did not have a pre-petition account with the utility. Utilities have a simple duty pursuant to 11 U.S.C. § 366: "if the utility shut off service prepetition, the utility must restore service after the bankruptcy petition is filed and before it receives its adequate assurance if the debtor so requests within [] 20 days" or 30 days in the case of Chapter 11 petitions. 2 Bankruptcy Law Manual at § 7:64. Such duty was not violated in this case because LUMA's delay in connecting the electric power did not stem from the commencement of this case or a pre-petition debt. Once Debtor provided all documents required for the opening of a new account, the electric power was connected.

### B. 11 U.S.C. § 525

11 U.S.C. § 525, "also known as the "anti-discrimination provision", protects debtors under the Code from various forms of discrimination from governmental units." In re Vaca Brava Old San Juan, LLC, 560 B.R. 376, 382 (Bankr. D.P.R. 2016). Such section provides in relevant part the following:

> … a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a). It "prohibits discrimination by a governmental unit with respect to a license, permit, charter, franchise or other similar grant based upon the fact that a person has been a debtor under the Code or the fact that the debtor has not paid a discharged debt." 3 Collier on Bankruptcy at ¶ 366.04. Therefore, "[i]f the right to receive utility service is deemed a license or franchise, a governmental utility may not discriminate against a debtor based upon the nonpayment of a prepetition debt or the commencement of a bankruptcy case." Id.

As stated above, the court finds that LUMA did not refuse to provide service to Debtor based on failure to pay a prepetition debt or the commencement of this case. LUMA refused to connect service because Debtor did not have an electric power account of its own and had to go through the process required for all new customers to have its account opened. Once Debtor provided LUMA with the only document missing to open a new account- the certificate of good standing- the electric power was connected. Debtor did not show that LUMA's actions were caused or impacted by Debtor's bankruptcy or insolvency. Therefore, under the facts of this case in which LUMA required Debtor to provide the documents it requests to all its new commercial customers, the court finds that LUMA did not violate 11 U.S.C. § 525.

## IV.    CONCLUSION

In conclusion, the court finds that LUMA did not violate 11 U.S.C. §§ 362, 366 or 525. Therefore, Debtor's Emergency Motion at Dkt. # 89 is hereby denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of February, 2024.

María de los Ángeles González
United States Bankruptcy Judge

-12-